UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


LISA DAY                          )
                                  )
v.                                )          NO. 2:01-CV-325
                                  )
INGLE'S MARKETS, INC.             )


## MEMORANDUM  AND  O R D E R


This matter is before the Court after a lengthy, highly contested trial of plaintiff's

claim for malicious prosecution before a jury from October 11 through October 20,

2005.   On October 20, 2005, the jury returned a verdict against Ingle's Markets, Inc.

["Ingle's"], determining that Ingle's was liable to the plaintiff for malicious prosecution

and awarding plaintiff the sum of $500,000.00 in compensatory damages.   The jury

also determined that plaintiff was entitled to punitive damages [Doc. 170].

Following a subsequent hearing, the jury rendered a verdict of $2,500,000.00 on

plaintiff's punitive damage claim. [Doc. 171].   Judgment was entered by this Court on

the jury's verdict on October 21, 2005.   [Doc. 173].   Following this adverse jury

verdict, Ingle's has filed a motion for judgment as a matter of law or, in the alternative,

for a new trial or for remittitur.  [Doc. 176].   The parties have fully briefed these issues

[Docs. 177, 183 and 186] and oral argument was heard by this Court on December 13, 2005.  The matter is now ripe for disposition.

## I.  BACKGROUND

On July 13, 1999, the plaintiff, Lisa K. Day, ("Day"or "plaintiff") was indicted by the Carter County, Tennessee, Grand Jury on a charge of theft over $10,000.00.  At the time of her arrest, Day was the assistant store manager at the Elizabethton Ingle's store.  Day was tried before a jury in the Carter County Criminal Court on November 1-2, 2000. At the close of the evidence, the jury acquitted Day of all charges.  Day subsequently brought the current malicious prosecution action against Ingle's.  Day alleges that Ingle's submitted false, fraudulent and incomplete information to the Carter County Grand Jury and other prosecutorial authorities, failed to do a reasonable pre-prosecution investigation and failed to disclose exculpatory information which tended to exonerate Day of the theft charges.

Ingle's, on the other hand, alleges that  it contacted law enforcement authorities to advise of its reasonable belief that a crime of theft over $10,000.00 had been committed by Day and denies that there was no basis for the charges of theft against the plaintiff.  Ingle's further alleges that all decisions concerning prosecution were made by authorities of the State of Tennessee and denies that Ingle's agents submitted false or fraudulent information to the prosecutorial authorities.

## II.  THE MOTION FOR JUDGMENT AS A MATTER OF LAW WITH

## RESPECT TO PLAINTIFF'S CLAIM FOR MALICIOUS PROSECUTION.

### 1.     Legal Standard

Rule 50 of the Fed. R. Civ. P. provides for judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue".   In diversity cases, a state law standard of review is applied when a Rule 50 motion for judgment as a matter of law is based on a challenge to the sufficiency of evidence necessary to support the jury's verdict. *Morales v. American Honda Motor Company*, 151 F. 3d 500, 506 (6th Cir. 1998).   In Tennessee,  a motion for judgment notwithstanding the verdict is the state law equivalent of a federal motion for judgment as a matter of law.   See *Tenn. R. Civ. P.* 50.02; *Mairose v. Federal Express Corp.*, 86 S.W. 3d 502, 510-11 (Tenn. Ct. App. 2001).

In reviewing a motion for judgment notwithstanding the verdict in Tennessee, an appellate court is "required to review the record, discard all countervailing evidence, take the strongest legitimate view of the evidence in favor of the nonmoving party, and allow all reasonable inferences in his favor." *Id.* at 511.   A motion for judgment notwithstanding the verdict is proper "only if, after assessing the evidence . . . , [the court] determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence." *Id.* (quoting *Eaton v. McLain*, 891 S.W. 2d 587, 590 (Tenn. 1994)).

A federal court in a diversity action under 28 U.S.C. § 1332 applies the substantive law of the state in which it sits.   *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817,

82 L.E. 1188 (1938); *Hayes v. Equitable Energy Resources Co.*, 266 F. 3d 560, 566 (6th Cir. 2001). In order to prove a cause of malicious prosecution in Tennessee, a plaintiff has the burden to prove by a preponderance of the evidence that (1) the defendant started or caused someone else to start the criminal proceeding against the plaintiff; (2) the defendant acted without probable cause in starting or causing someone else to start the proceeding against the plaintiff; (3) the defendant acted with malice; and (4) the case against the plaintiff ended in the plaintiff's favor. *Kauffman v. A.H. Robins Co.*, 448 S.W. 2d 400, 404 (Tenn. 1969).

2.      **Analysis**

In this case, the parties stipulated that the criminal case against the plaintiff had ended in the plaintiff's favor but Ingle's argues that Day failed to offer any proof upon which the jury could reasonably base a finding as to any of the other three necessary elements of a claim for malicious prosecution. The Court will analyze each of these elements separately.

a.      *Probable Cause*

Probable cause is established where "facts and circumstances [are] sufficient to lead an ordinarily prudent person to believe the accused was guilty of the crime charged." *Logan v. Kuhn's Big K Corp.*, 676 S.W. 2d 948, 951 (Tenn. 1984); *Lewis v. Williams*, 618 S.W. 2d 299, 303 (Tenn. 1981). The question of whether the plaintiff was guilty of the crime charged is not relevant to the question of probable cause. *Mullins v. Wells*, 60 Tenn.

4

App. 675, 450 S.W. 2d 599 (Tenn. Ct. App. 1969). Probable cause requires only the existence of such facts and circumstances sufficient to excite in a reasonable mind the belief that the accused is guilty of the crime charged. Probable cause is to be determined solely from an objective examination of the surrounding facts and circumstances. *Roberts v. Federal Express Corporation*, 842 S.W. 2d 246 (Tenn. 1992). The determination of the reasonableness of a defendant's conduct should generally be made by a jury. *Roberts* at 249.

Additionally, where plaintiff asserts that a reasonable pre-prosecution investigation would have revealed exculpatory facts and there is evidence to support the allegation, the jury is to determine the facts a reasonable investigation would have disclosed, and then make its probable cause determination considering those facts. *Id.* Presumably, although no Tennessee court has directly considered the question, the rule would be the same where a plaintiff alleges and offers evidence to support an allegation that criminal proceedings were instituted on the basis of false, incomplete and misleading information provided by the defendant.

The defendant in this case argues that the proof offered clearly demonstrates "that a reasonable person, considering all the facts available and considered by Ingle's at the time it first reported what it reasonably believed to be criminal activity to the police, would have believed that plaintiff was guilty of theft", and argues that such conclusion is bolstered "by the fact that, on five separate occasions, a judicial entity operating in the

context of Ms. Day's criminal proceedings agreed with this conclusion and found that there was at least probable cause to believe that Ms. Day committed the crime Ingle's reported to police." Ingle's further argues that such findings *preclude* plaintiff's assertion that Ingle's acted without probable cause as a matter of law. This Court will first consider the assertions of the defendant as to the preclusive effects of prior probable cause findings in the criminal proceedings against Ms. Day.

(1) **The preclusive effect of the Carter County Grand Jury's findings of probable cause.**

It is undisputed that the Carter County, Tennessee Grand Jury first indicted Day on July 13, 1999, and that, after the discovery of a technical deficiency in the original indictment, issued another indictment dated January 6, 2000. The return of a true bill undeniably represents a finding by the Carter County, Tennessee Grand Jury on each of those occasions that probable cause existed to believe that the crime of theft had been committed and that it had been committed by Day. To the extent, however, that defendant argues that these grand jury indictments establish probable cause as a matter of law in this malicious prosecution action and conclusively preclude relitigation of that issue, defendant is mistaken. Tennessee courts have declined to adopt a per se rule that the indictment of the accused by a grand jury is evidence that the person who initiated the proceedings has probable cause therefore. *Kerney v. Aetna Casualty and Surety Company*, 648 S.W. 2d 247 (Tenn. Ct. App. 1982). Where the grand jury's finding is

procured by fraud, false testimony or other corrupt means, an indictment is not sufficient to bar a subsequent suit for malicious prosecution. *Kerney* at 252; *Gray v. 26th Judicial Drug Task Force*, 1997 WL 379141 (Tenn. Ct. App.); *Spicer v. Thompson*, 2004 WL 1531431 (Tenn. Ct. App.).

Defendant, of course, argues that there is absolutely no evidence in this case that Ingle's procured Day's indictment by fraud, false testimony or other corrupt means and, therefore, Ingle's is entitled to judgment as a matter of law. There is, however, testimony that John Freshour, Ingle's store manager, who was the only witness to testify before the initial Carter County Grand Jury considering Day's case, intentionally failed to inform the grand jury of relevant, material facts, many of which were exculpatory to Day, surrounding these alleged thefts. Taking the strongest legitimate view of the evidence in favor of Ms. Day and allowing all reasonable inferences in her favor, this Court cannot find as a matter of law that plaintiff's indictment was not procured through fraud, false testimony or other corrupt means. The indictments, therefore, do not preclude relitigation of the question of probable cause.

(2)     **The preclusive effect of the Carter County General Sessions Court's finding of probable cause at plaintiff's preliminary hearing.**

After Day's reindictment on the theft charge, the criminal court judge granted a defense motion for a preliminary hearing and remanded the case to the Carter County General Sessions Court for such purpose. A preliminary hearing was held before the

General Sessions Court Judge on March 1, 2000. At the conclusion of the hearing, the General Sessions Court Judge determined that the State had presented sufficient evidence to establish probable cause that Day had committed the offense with which she had been charged and the case was then transferred back to the criminal court.

Relying on *Smith v. Buttry*, 111 Fed. Appx. 372 (6th Cir. 2004), *Smith v. Thornburg*, 136 F. 3d 1070 (6th Cir. 1998) and *Coogan v. City of Wixom*, 820 F. 2d 170 (6th Cir. 1987), the defendant argues that it is "well established in the Sixth Circuit" that a finding of probable cause by an examining state judge forecloses relitigation of the issue of probable cause in a subsequent malicious prosecution case. Plaintiff, on the other hand, relies on a trio of Sixth Circuit cases for the proposition that a state court's probable cause finding at a preliminary hearing does not bar relitigation of the probable cause issue in a subsequent malicious prosecution case. *Darrah v. City of Oak Park*, 255 F. 3d 301 (6th Cir. 2001); *Hinchman v. Moore*, 312 F. 3d 198 (6th Cir. 2002); *Buttino v. City of Hamtramck*, 87 Fed. Appx. 499 (6th Cir. 2004).

Once again, to the extent that defendant urges a per se rule that a finding of probable cause in the general sessions court precludes a finding of lack of probable cause in a subsequent civil action for malicious prosecution, defendant misstates the law. First of all, defendant can point to no Tennessee decision so holding. Secondly, the Tennessee Court of Appeals, in an unreported decision, has held to the contrary. In *Yant v. Arrow Exterminators, Inc.*, the Court of Appeals held that "a finding of probable cause in the

general sessions court does not, in and of itself, preclude a finding of lack of probable cause in a subsequent civil action for malicious prosecution. *Yant v. Arrow Exterminators, Inc.*, 1999 WL 43239 at *3 (Tenn. Ct. App. 1999) (citing *Perry v. Sharber*, 803 S.W. 2d 223 (Tenn. App. 1990)). More importantly for this discussion, defendant mischaracterizes the holding of the Sixth Circuit in *Buttry*, *Thornburg* and *Coogan*. In actuality, when these cases are read along with *Buttino, Hinchman* and *Darrah*, they stand for a very simple proposition. Absent an allegation and proof that the determination of probable cause in a preliminary hearing was based upon false statements made at the preliminary hearing by the defendant or based upon an investigation conducted in bad faith (in other words, a challenge to the integrity of the evidence), a determination in a preliminary hearing that the evidence is sufficient to establish probable cause will preclude relitigation of that issue in a subsequent civil action for malicious prosecution. Where there is an allegation and proof, however, that the defendant misstated the facts to establish probable cause, that is, a challenge to the integrity, rather than the sufficiency, of the evidence to establish probable cause, the finding of probable cause in a preliminary hearing has no preclusive effect upon the subsequent relitigation of the issue in a malicious prosecution action.

The instant case is more analogous to *Buttino*, *Hinchman* and *Darrah* than to *Buttry*, *Thornburg* and *Coogan* and the defendant ignores the essence of the allegation made by the plaintiff in this case, that is, that both the indictments in this case and the

probable cause finding at the preliminary hearing were procured based upon false, incomplete and misleading information and testimony provided by the defendant and its agents. Once again, taking the strongest legitimate view of the evidence in favor of plaintiff, there was testimony in this case to establish that John Freshour gave false, incomplete and misleading testimony to both the Carter County Grand Jury and the Carter County General Sessions Court. Nothing in this record suggests that the general sessions judge, as in *Buttino*, did not rely upon the false, incomplete and misleading testimony of the defendant's agents in making his probable cause determination.[1] The issue of the existence of probable cause was, therefore, an issue of fact for the jury to resolve.

(3)     **The preclusive effect of the Carter County Criminal Court's denials of plaintiff's Rule 29 motions during her criminal trial.**

At the conclusion of the State's proof and again at the conclusion of all the proof in the criminal trial, defense counsel (Day's counsel) made a motion for judgment of acquittal pursuant to Rule 29 of Tenn. R. Crim. P. which provides that the trial court "shall order the entry of a judgment of acquittal of one or more offenses in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses." In resolving a motion for judgment of

---

[1]     Both plaintiff and defendant appear to overstate and mischaracterize the holding of the Sixth Circuit in *Buttino*. Plaintiff's effort to rely on *Buttino* for the proposition that a determination of probable cause will never bar subsequent relitigation of that issue in a civil case "if the veracity and credibility of the witnesses at the preliminary hearing are at issue" is overly broad and goes beyond the actual holding of the court. On the other hand, defendant's assertion that *Buttino* requires the plaintiff to establish that the fact finder at the preliminary hearing <u>relied</u> on the false, incomplete or misleading testimony to reach its probable cause finding is likewise a misstatement of the court's holding.

acquittal under Rule 29, the trial court must examine the <u>sufficiency</u> of the evidence. In determining the sufficiency of the evidence, a court considers the evidence presented at trial in the light most favorable to the prosecution and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The court does not reweigh or reevaluate the evidence. Nor does a court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Williams*, 657 S.W. 2d 405 (Tenn. 1983); *State v. Gillon*, 15 S.W. 3d 492 (Tenn. Crim. App. 1997). Defendant argues that the standard for adjudicating plaintiff's criminal Rule 29 motions was a standard that far exceeds the lesser standard of simple probable cause or, in other words, that the denial of a Rule 29 motion for judgment of acquittal necessarily entails a finding of probable cause.

Both parties acknowledge that no Tennessee case specifically addresses this question; however, the parties direct this Court's attention to decisions of state courts in Georgia, Ohio, Oregon, New York, Florida and Arkansas. Both parties urge this Court to adopt the reasoning of the courts of one or more of those states, anticipating that the Tennessee Supreme Court, if confronted with the same question, would determine such to be the law and/or public policy of this state.

It is unnecessary, however, for this Court to speculate as to what the Tennessee Supreme Court might hold given the factual situation set forth in any of those cases cited by either the plaintiff or the defendant. Such analysis is unnecessary for a very simple

reason.   The question for the trial judge in deciding a Rule 29 motion goes to the sufficiency of the evidence, not to its integrity.   It is not the role of the trial judge to determine, in deciding a Rule 29 motion, whether a particular witness is credible, has testified falsely, or has given incomplete or misleading testimony.   The trial judge's only inquiry concerns the sufficiency of the evidence.   Such factual questions are left for the jury to decide.   As set forth in Section II(2)(a)(2) above, plaintiff's action in this case challenges the integrity of the evidence supplied by the defendant through its agents and not the sufficiency of that evidence.   For the reasons set forth in the above section, therefore, the determination of the State criminal court of the plaintiff's Rule 29 motions in the criminal case does not preclude relitigation of the issue of probable cause in this case.

(4)    **The defensive use of collateral estoppel.**

A state court's judgment is given the same preclusive effect in federal court that it would have under the law of the state in which the judgment was rendered.   *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984).   Under Tennessee law, collateral estoppel applies when  (1)  the issue sought to be precluded is identical to the issue decided in the earlier suit;  (2)  the issue was actually litigated and decided on its merits in the earlier suit;  (3)  the earlier judgment has become final;  (4)  the party against whom collateral estoppel is asserted was a party or in privity with a party to the earlier suit; and (5)  the party against whom collateral

12

estoppel is asserted had a full and fair opportunity to litigate the issue in the earlier suit. *Beaty v. McGraw*, 15 S.W. 3d 819, 824-825 (Tenn. Ct. App. 1998).

The parties in this case disagree strongly over the question of whether Tennessee law requires mutuality of parties to apply the doctrine of collateral estoppel. This Court need not address that issue, however. Collateral estoppel does not preclude relitigation of the issue of probable cause in this case for the same reasons set forth in Sections II(2)(a)(2) and (3) above. For collateral estoppel to apply, whether used offensively or defensively, the issue sought to be precluded must be identical to the issue decided in the earlier case. As set forth above, the probable cause determinations made by the Carter County Grand Jury, the Carter County General Sessions Court and the State Criminal Court Judge in the Rule 29 determinations all dealt with the sufficiency of the evidence to establish probable cause rather than the integrity of the evidence upon which the probable cause determination was based. In this case, the plaintiff asserts that the defendant, through its agents, gave false, incomplete and misleading testimony in order to establish probable cause. Since there is no identity of issues, collateral estoppel does not apply in this case.

(5)     **Ingle's reliance upon advise of counsel.**

In this case, Ingle's argues that the evidence at trial demonstrated that Ingle's acted in good faith pursuant to the direction of and upon the advice of the Carter County District Attorney General's Office. "Advice of counsel" is an affirmative defense to a civil claim

for malicious prosecution. To establish the advice of counsel defense, the defendant must prove: (1) that the attorney's advice was sought in good faith; (2) that defendant divulged all material facts relating to the case, ascertained or ascertainable by the exercise of due diligence; and (3) that the case was commenced pursuant to the attorney's advice. *Abernethy v. Brandt*, 120 S.W. 3d 310, 314 (Tenn. Ct. App. 2002); *Thompson v. Schulz*, 34 Tenn. App. 488, 240 S.W. 2d 252 (Tenn. Ct. App. 1949). The district attorney general is counsel whose advice can constitute a defense to a claim for malicious prosecution.

Once again, taking the strongest legitimate view of the evidence in favor of plaintiff and allowing all reasonable inferences in her favor, the proof in this case established that the prosecution of the plaintiff in the criminal case at issue here was in fact commenced by the defendant or at the discretion of the defendant. Evidence, apparently believed by the jury, established that it was left to Laverne Douglas, defendant's security officer to make the decision of whether or not to prosecute Ms. Day. In addition, Mr. Freshour, defendant's store manager, who was the only witness before the initial Carter County Grand Jury, testified that he had no contact with and received no advice from the district attorney general prior to his appearance at the grand jury. There was also considerable evidence in the record of this trial to establish that various exculpatory information which was known by, or should have been known by, Ingle's was not presented to the district attorney general and that certain incorrect and misleading information was provided to him. (See trial exhibit 49, for example). Ingle's has not made out an affirmative defense

of reliance or advice of counsel as a matter of law.

b.   ***Proof that Ingle's started or caused someone else to start the criminal proceeding against Day.***

Ingle's argues that plaintiff offered no proof that Ingle's started or caused someone else to start a criminal proceeding against her as is required to prove a cause for malicious prosecution.   The essence of defendant's argument is that it was the District Attorney General's Office for the First Judicial District of the State of Tennessee which started and pursued the prosecution against the plaintiff.  Citing testimony from the Assistant District Attorney General who prosecuted the case, defendant argues that the ultimate decision on whether or not to prosecute was made by the District Attorney General and that Ingle's applied no pressure of any kind during the prosecution of the case.  Ingle's argues, therefore,  that it is entitled to judgment as a matter of law on this issue.

Ingle's argument, however, completely disregards testimony introduced at trial from one of its own employees that the decision whether to prosecute or not was left to the discretion of Ingle's.[2]   Ingle's offered undisputed testimony at trial that it is the District Attorney General's Office which is vested with absolute discretion as to which cases it chooses to prosecute.   Individuals, therefore, are not permitted to draft indictments and present them to a grand jury.  Were this Court to adopt the position

---

[2]   While Ingle's does acknowledge this testimony in a footnote of its brief, Ingle's argues that the evidence is a "mere scintilla of evidence" in complete contradiction to the testimony of the actual decision maker in the case and should be disregarded.

argued for by Ingle's on this isssue, no malicious prosecution case could ever succeed once an indictment had been returned in that case by a grand jury. Ingle's cites no case law support for such a proposition and, in fact, the case law is to the contrary.

Judge Goddard, addressing the issue for the Eastern Section of the Tennessee Court of Appeals in *Wykle v. Valley Fidelity Bank & Trust Company*, stated the following rule:

> "The defendant may be liable either for initiating or for continuing a criminal prosecution without probable cause. But he cannot be held responsible unless he takes some active part in instigating or encouraging the prosecution . . . . [I]f he advises or assists another person to begin the proceeding, ratifies it when it is begun in his behalf, or takes an active part in directing or aiding the conduct of the case, he will be responsible.

*Wykle v. Valley Fidelity Bank & Trust Company*, 658 S.W. 2d 96, 98 (Tenn. Ct. App. 1983).

Not only is there proof in this case from which the jury could conclude that the ultimate prosecution decision was left to Ingle's, there is also proof from which the jury could conclude that Ingle's was intimately involved with and took an active part in the prosecution. The Assistant District Attorney General who handled the case testified that he had numerous discussions with representatives from Ingle's in preparation for trial. There is also evidence that Ingle's knew of certain exculpatory information which was not provided to either the police officers investigating the case or to the district attorney general's office and that Ingle's supplied all documentary evidence used at the trial to the prosecutor.

c.    *Proof that Ingle's acted with malice.*

Ingle's also argues that plaintiff has failed to establish the malice element of her claim for malicious prosecution arguing that there is "no proof of an attitude or state of mind on the part of any Ingle's employee that caused them to do anything for an improper or wrongful motive or purpose."   Once again, Ingle's misunderstands the proof required to establish this element of plaintiff's claim for malicious prosecution.   Tennessee law does not require affirmative proof that Ingle's acted with a wrongful motive or purpose. On the contrary,  Tennessee courts have held that malice may be inferred from a lack of probable cause and that a showing of lack of  probable cause will give rise to a rebuttable presumption of malice. *Sullivan v. Young*, 678 S.W. 2d 906 (Tenn. Ct. App. 1984).  *See also Cantrell v. Sir*, 2002 WL 662042 (Tenn. Ct. App.).   While there was some evidence offered by Ingle's that its employees did not act with any improper or wrongful motive or purpose, there was also proof offered from which the jury could, and apparently did, conclude that Ingle's employees intentionally provided false, incomplete and misleading testimony in this case.   In short,  the presumption, along with the other proof in the case, created an issue to be decided by the jury as to the malice element of plaintiff's claim for malicious prosecution.

## III.    THE MOTION FOR JUDGMENT AS A MATTER OF LAW WITH RESPECT TO PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES.

Under Tennessee law, punitive damages may be awarded only if a defendant has

acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly. *Hodges v. S.C. Toof & Co.*, 833 S.W. 2d 896, 900-01 (Tenn. 1992). Punitive damages are reserved for the most egregious of cases and the plaintiff must prove entitlement to punitive damages by clear and convincing evidence. "Clear and convincing evidence" is defined as "evidence in which there is no serious or substantial doubt about the correctness or the conclusions drawn from the evidence." *Id.* at 901. Punitive damages serve a broader function than compensatory damages and "are aimed at deterrence and retribution." *State Farm Mutual Auto Insurance Company v. Campbell*, 538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003).

Ingle's argues that plaintiff failed to show by clear and convincing evidence that Ingle's intentionally, fraudulently, maliciously, or recklessly acted to harm Ms. Day in this case. Specifically, Ingle's argues that plaintiff offered no evidence of a deliberate intent to harm plaintiff and that there was no evidence produced that Ingle's employees were "motivated by ill will, hatred or personal spite." As noted above, when reviewing a motion for judgment notwithstanding the verdict in Tennessee, the court is required to review the record and take the strongest legitimate view of the evidence in favor of the non-moving party. While this Court has expressed previous reservations about plaintiff's punitive damage claim in this case, the strongest legitimate view of the evidence in favor of the plaintiff precludes judgment as a matter of law. There certainly is evidence to support a finding by clear and convincing evidence that Ingle's intentionally failed to do

a proper pre-prosecution investigation, that Ingle's either knew or should have known of exculpatory evidence which it did not disclose, and that defendant, through its employees, intentionally provided false and misleading information to the grand jury and to the district attorney general's office.

## IV.    THE MOTION FOR NEW TRIAL BECAUSE THE JURY DETERMINATION IS CONTRARY TO THE CLEAR WEIGHT OF THE EVIDENCE.

**1.    Legal Standard**

A new trial is warranted under Fed. R. Civ. P. 59(a) when a jury has reached a seriously erroneous result as evidenced by:

(1)  A verdict that was against the evidence;
(2)  An excessive award of damages;  or
(3)  A trial unfair to the moving party.

*Holmes v. City of Massillon, Ohio*, 78 F. 3d 1041, 1045-46 (6th Cir. 1996).

However, a jury verdict should not be disturbed unless it is "clearly excessive, resulted from passion, bias or prejudice; or is so excessive or inadequate as to shock the conscience of the court." *Farber v. Massillon Board of Education*, 917 F. 2d 1391, 1395 (6th Cir. 1990).   Accordingly, a trial court should deny a motion for a new trial if the verdict is one that reasonably could have been reached, regardless of whether the trial judge might have reached a different result if he or she was the trier of fact. *United States v. L.E. Cooke Co., Inc.*, 991 F. 2d 336, 343 (6th Cir. 1993).

19

A district court is not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because the judge feels that other results are more reasonable. A court may not, therefore, substitute its judgment for that of the jury but should only act when it is convinced the jury's decision was unreasonable. *Portage II v. Bryant Petroleum Corp.*, 899 F. 2d 1514, 1523-24 (6th Cir. 1990); *TCP Industries, Inc. v. Uniroyal, Inc.*, 661 F. 2d 542, 546 (6th Cir. 1981). In short, this Court's role in determining a motion for a new trial on grounds that the jury's verdict is against the clear weight of the evidence requires this Court to deny the motion if the verdict is one that could reasonably have been reached, regardless of whether this Court would have decided the facts similarly.

## 2. Analysis

The burden of demonstrating the necessity of a new trial is on the moving party, Ingle's. *Clarksville-Montgomery County School System v. U.S. Gypsum Company*, 925 F. 2d 993, 1002 (6th Cir. 1991). Whenever the moving party argues that a jury verdict is against the weight of the evidence, as here, this Court must then assess and weigh the evidence presented at trial and determine whether the jury could reasonably have returned the verdict it did. The question for this Court is not whether or not the Court, sitting as fact finder, would have drawn different inferences or conclusions or even whether results other than those reached by the jury are more reasonable. If the result reached by the jury is reasonable, the court should accept the verdict. *See L.E. Cooke Co., Inc.*, 991 F. 2d at

343. This Court's role, then, is to compare the opposing proofs, weigh the evidence and determine whether the jury's verdict was contrary to the clear weight of the evidence.

The instant litigation arises out of the events and circumstances surrounding Day's employment with Ingle's as an assistant manager at Ingle's Elizabethton store and her subsequent prosecution on a charge of theft of property valued at more than $10,000.00 from Ingle's. These events occurred between March, 1999 and November, 2000. On March 31, 1999, Tina Thorpe, the operations accounting manager for Ingle's was reviewing reports reflecting sales tax credit at Ingle's stores, apparently while doing routine accounting. These sales tax reports reflect credits due from the State of Tennessee for sales taxes paid on goods returned for a refund. During that review, Ms. Thorpe noticed what she considered to be unusually high sales tax credits for Ingle's store 397 in Elizabethton, Tennessee.

Further investigation by Ms. Thorpe revealed that some of these sales tax credits were the result of large, even dollar "outside the transaction" voids at the Elizabethton store. These outside the transaction voids occur after a sale is completed and are accomplished through the use of an eight digit void card[3] with a bar code to be read by the store computer. A sale generally may not be voided without the use of one of these void cards which are generally issued only to store management employees. The eight digit

_____

[3] The terms "void card" and "override card" were used interchangeably by the parties when referring to these cards.

21

number on the void card identifies the card to a particular position in the store. Many of the voids found by Ms. Thorpe were accomplished through the use of void card number 79339712, a card issued to the assistant store manager (in this case, Lisa Day). O n April 1, 1999, Ms. Thorpe contacted the Elizabethton store and talked with the store manager, John Freshour. As a result of their conversation about these matters, a decision was made to issue new cards. At the time these cards were issued, employees were reminded as to the importance of proper use of the void card and informed that they would be terminated for improper use. Ms. Day signed for her card on April 3, 1999 and acknowledged, in writing, that she would be terminated if she allowed any other person to use her card.

On April 5, 1999, Ms. Thorpe discovered a $200.00 outside the transaction void which had occurred on the prior day, Easter Sunday, at approximately 9:00 a.m. On Easter Sunday, Ms. Day had been the senior management employee on duty at the store and the void was once again accomplished through the use of Ms. Day's void card or eight digit number. As with the other large, even dollar voids, there was no itemization in the store's computers to reflect the items which might have been returned for cash.

On April 6, 1999, Miles Goforth, head of store security for Ingle's, Laverne Douglas, assistant head of store security, and Bruce Thompson, district manager, met at store 397 with the store manager, John Freshour. Later in the day, Goforth, Douglas and Freshour met with Day. Day denied knowing anything about the voids at issue but

indicated that she might have loaned her card to another employee, Christy Cagle, on Easter Sunday. Store records reflected that Christy Cagle had not come to work at store 397 until 3:00 p.m. on April 4. Ms. Day was then suspended pending an investigation by Ingle's.

On that same date, Goforth suffered a heart attack and was incapacitated from work.[4] Nothing further occurred related to the matter until May, 1999, when Ingle's employees took the above information to detectives with the Elizabethton, Tennessee Police Department. Ms. Day was called to the police department and a statement taken from her by the officers. On July 13, 1999, an indictment was returned by the Carter County, Tennessee Grand Jury charging Day with theft of property valued at more than $10,000.00. John Freshour was the only person to appear before the grand jury. Day was subsequently arrested on a warrant issued by the court as a result of the indictment and released on bond.

Day's attorney challenged the indictment on technical grounds because it did not state the owner of the property allegedly stolen. On January 6, 2000, the district attorney's office resubmitted the case to the Carter County Grand Jury and obtained a new indictment correcting the technical defect in the first indictment. On the occasion of the second indictment, one of the police detectives from the Elizabethton Police Department testified before the grand jury. In a somewhat unusual development, Ms. Day's defense

---

[4] There is a dispute between the parties about whether or not Goforth ever returned to work for Ingle's.

attorney persuaded the criminal court judge assigned to the matter to remand the case to the General Sessions Court for Carter County for a preliminary hearing. After a preliminary hearing in the General Sessions Court on March 12, 2000, the General Sessions Court Judge found that probable cause existed to believe that the crime of theft of property valued at more than $10,000.00 had been committed and that Lisa Day had committed it. The case was tried before a jury in the Carter County Criminal Court on November 1 and 2, resulting in a "not guilty" verdict after very short deliberations by the jury.

Prior to the issuance of new override cards to employees in early April, 1999, Freshour, the store manager, had requested that new cards be issued on three separate prior occasions. Freshour had become concerned because some employees' cards had been lost and that other employees had left employment with Ingle's without returning their cards to him, as store policy required. Freshour was aware that a shortage of cards necessitated the swapping of cards by employees. Freshour himself had loaned his override card to other employees. In any event, new override cards were issued only after Tina Thorpe became aware of the above referenced problem with outside the transaction voids.

During her meeting with Goforth, Douglas and Freshour on April 6, 1999, Day protested her innocence and offered to take a polygraph test. Ingle's, while under no duty to offer a polygraph examination, never voluntarily made such examination available to Day. As set forth above, no investigation was done by Ingle's between Ms. Day's

suspension on April 6, 1999 and sometime in May, 1999 when Douglas took this information to the Elizabethton Police Department. Douglas later testified that the decision of whether or not to prosecute Ms. Day was left up to Ingle's to decide. Also as set forth above, Freshour was the only witness to testify at the initial grand jury and he acknowledged that he never made the grand jury aware of various exculpatory information concerning Ms. Day and these events, most notably that card swapping was common at the store. In fact, during testimony at the preliminary hearing, Freshour affirmatively denied that anyone was swapping cards in violation of store policy and denied any awareness on his part of such activity. Freshour also denied during the preliminary hearing that he had ever left his override card with any other employee for that employee's use. At the trial of the instant action, however, Freshour contradicted all of that testimony, leading to the rather clear inference that Freshour's testimony before the grand jury and at the preliminary hearing was inaccurate, incomplete and misleading. In fact, other store employees testified that these override cards were exchanged freely among employees "without much thought" and with the full knowledge of the store manager.

Had this Court been sitting as fact finder in this case, this Court, in all likelihood, would have resolved the conflicting proof set forth above in favor of Ingle's. That, however, is of no consequence as to this motion. This Court may not substitute its judgment for that of the jury. This Court's only inquiry is whether or not the inferences and conclusions drawn by the jury from the proof in the case are reasonable. Having

considered the proof in and weighing the evidence of this case, this Court cannot say that the jury's verdict was unreasonable. It is also quite clear that inferences or conclusions other than those reached by the jury could have been reached, had the defendant carried its burden of persuasion, and that such contrary inferences and conclusions might have been more reasonable than those the jury ultimately reached. Once again, however, that is not an inquiry this Court may make on this motion. For these reasons, the jury determination of liability for malicious prosecution is not contrary to the clear weight of the evidence in this case.

## V. THE MOTION FOR A NEW TRIAL OR REMITTITUR OF THE COMPENSATORY DAMAGES VERDICT AS AGAINST THE CLEAR WEIGHT OF THE EVIDENCE PRESENTED OR AS EXCESSIVE.

Ingle's argues that the jury's award of $500,000.00 in compensatory damages in this case is clearly against the weight of the evidence and excessive. Ingle's argues that the plaintiff's proof of compensatory damages was "virtually absent" and cites proof of the $5,847.25 Ms. Day spent to defend the criminal action as the only proof of "hard damages" offered at trial.

A remittitur is warranted only when, after reviewing all of the evidence in the light most favorable to the prevailing party, the trial court is convinced that the verdict is clearly excessive, resulted from passion, bias or prejudice, or is so excessive or inadequate as to shock the judicial conscience of the court. *Mid-Michigan Computer Systems, Inc. v. Marc Glassman, Inc.*, 416 F. 3d 505 (6th Cir. 2005). In fact, where the jury finds a particular

quantum of damages and the trial court refuses to disturb the jury's findings on the motion for new trial, an appellate court will not order a remittitur or a new trial unless it is "certain indeed that the award is contrary to all reason." *Manning v. Altec, Inc.*, 488 F. 2d 127 (6th Cir. 1973).

Applying these standards, this Court cannot say that the award was "contrary to all reason" or excessive. Plaintiff was about 37 years of age at the time the events in question occurred. Plaintiff proved damages of approximately $6,000.00 expended to defend herself against the criminal charges. Plaintiff also offered proof of lost wages in excess of $100,000.00, as well as loss of benefits such as health insurance. Plaintiff also presented proof which, if accepted by the jury, as it apparently was, established considerable mental anguish, emotional pain and suffering and loss of enjoyment of life. As the jury was instructed, there is no mathematical formula for computing reasonable compensation for mental or emotional pain and suffering or loss of the capacity for the enjoyment of life and these kinds of injuries are not often measurable in monetary terms. In addition, a psychiatrist testified that plaintiff had sustained permanent psychological injury as a result of these events. This Court will not disturb the jury's verdict with respect to compensatory damages.

## VI.     THE MOTION FOR NEW TRIAL OR REMITTITUR OF THE JURY'S PUNITIVE DAMAGES VERDICT.

Ingle's argues that the jury's punitive damages verdict of $2.5 million, when

weighed against the factors set forth in *Hodges v. S.C. Toof & Co.*, 833 S.W. 2d 896

(Tenn. 1992), is "grossly excessive" and entitles Ingle's to a new trial. In *Hodges*, the

Tennessee Supreme Court set forth nine factors for the jury's consideration in rendering

a punitive damages award:

> (1)    The defendant's financial affairs, financial condition, and net worth;
>
> (2)    The objectionable nature of the defendant's wrong-doing, the impact of the defendant's conduct on the plaintiff, and the relationship of the parties;
>
> (3)    The defendant's awareness of the amount of harm being caused and the defendant's motivation in causing the harm;
>
> (4)    The duration of the defendant's misconduct and whether the defendant attempted to conceal the conduct;
>
> (5)    Whether the defendant profited from the activity and if so, whether the punitive award should be in excess of the profit in order to deter similar future behavior;
>
> (6)    The number and amount of previous punitive damage awards against the defendant based upon the same wrongful act;
>
> (7)    Whether, once the misconduct became known to the defendant, the defendant tried to remedy the situation or offered a prompt and fair settlement for the actual harm caused; and
>
> (8)    Any other circumstances shown by the evidence that bears on determining the proper amount of the punitive award.[5]

Ingle's argues that the jury did not consider the *Hodges* factors but instead was

guided by passion and emotion in making its punitive damage award. Ingle's essentially

---

[5] These are the *Hodges* factors which the parties agreed should be charged to the jury in this case.

argues that all of the *Hodges* factors weigh against a punitive damages award except for the defendant's financial condition.

In reviewing an award of punitive damages, the role of the district court is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to the federal standards developed under Rule 59, whether a new trial or remittitur should be ordered. *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 259, 109 S. Ct. 2909, 106 L.Ed. 2d 219 (1989).[6] It is the issue of punitive damages which has caused this Court the most difficulty. This Court in fact remarked prior to submitting the punitive damages issue to the jury, as pointed out by the defendant, that plaintiff's evidence justifying punitive damages was meager. Once again, however, this Court may not substitute its judgment for that of the jury but rather must consider the proof in and weigh the evidence of this case to determine whether or not the jury's verdict is within the confines set by law. This Court gives great deference to a jury verdict and has reexamined the evidence in the case carefully in deciding this motion.

From the jury's verdict, it is clear that the jury determined that Ingle's had acted

---

[6] Where punitive damages are awarded, the Tennessee Supreme Court generally requires a trial judge to "review the jury's award of punitive damages and clearly set forth the reasons for decreasing or approving all punitive awards and findings of fact and conclusions of law demonstrating a consideration of all factors on which the jury was instructed." *Culbreath v. First Tennessee Bank National Association*, 44 S.W. 3d 518, 528 (Tenn. 2001). Tennessee law requiring a trial court to make such findings is a matter of procedure, however, and in a diversity action a federal court is not bound by state procedural rules. *Buziashvili v. Inman*, 106 F. 3d 709, 719 (6th Cir. 1997). Since this Court is not bound by the Tennessee procedural requirement, it is unnecessary for the court make findings of fact and conclusions of law in connection with the punitive damages award.

deliberately or recklessly in this case. Clearly the defendant's financial condition and ability to pay a punitive damage award weighs strongly in favor of the jury's verdict. Ingle's earned net profits of over $28 million during the four quarter period ending September 30, 2005. The punitive damages award in this case is less than ten percent (10%) of the net profits earned by Ingle's during that period.

It is also obvious from the jury's decision that the jury found Ingle's conduct in this case to be reprehensible. Indeed, it is difficult to describe the actions of Ingle's agents in providing false, misleading and incomplete testimony and evidence before the grand jury, the general sessions court and the criminal court (see trial exhibit 49) as anything less than reprehensible. While the jury could have clearly concluded that Ingle's conduct was not deliberate or reckless and that Ingle's did not intentionally or knowingly submit false, misleading and incomplete testimony and evidence in the criminal case against Ms. Day, and while such an inference would have been reasonable under the evidence, the simple fact remains that these were highly contested issues between the parties at trial which the jury has resolved in the plaintiff's favor. In fact, viewing the evidence in that light, Ingle's conduct represents a perversion of the criminal justice system, a system the integrity of which depends upon citizens to supply complete and truthful testimony and evidence in these proceedings.

Plaintiff also submitted evidence, apparently credited by the jury, that the defendant's wrongful conduct continued unabated over a fairly lengthy period of time

from the submission of Ingle's "evidence" to the Elizabethton Police Department, before the Carter County Grand Jury and General Sessions Court and, finally, before the jury at Ms. Day's criminal trial. At no time during these proceedings did Ingle's attempt to correct or supplement the information provided to the state authorities and state court nor did Ingle's attempt to make amends to Ms. Day subsequent to the criminal trial. In addition, the potential harm caused by criminal proceedings where the integrity of the evidence is compromised is clear to even a casual observer. Given the completely reprehensible nature of Ingle's conduct in this case, this Court cannot say that the punitive damages award in this case is unreasonable when viewed in light of the *Hodges* factors.

Ingle's also argues that the punitive damage award violates the due process clause of the Fourteenth Amendment of the United States Constitution and the Tennessee Constitution. The United States Supreme Court has identified three factors in determining whether a punitive damages award is constitutionally excessive: 1) The degree of reprehensibility of the defendant's conduct, 2) The disparity between the harm or potential harm suffered by the plaintiff and the punitive damage award, and 3) The difference between the punitive damages and the civil penalties authorized or imposed in comparable cases. *State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003); *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed.2d 809 (1996); *Argentine v. United Auto Workers of America, AFL-CIO*, 287 F. 3d 476 (6th Cir. 2002). In determining reprehensibility,

consideration should be given to a number of "aggravating factors" including whether the harm was more than "purely economic in nature" and whether a defendant's actions constitute "trickery or deceit" as opposed to mere negligence. *BMW*, 517 U.S. at 576, 116 S. Ct. at 1599. In this case, the harm was certainly more than purely economical in nature as the jury apparently determined that the harm represented an invasion of Ms. Day's individual rights. Likewise, as discussed above, it is clear from the jury's decision that Ingle's acted deceitfully in providing false, misleading and incomplete testimony and evidence in the state criminal proceedings.

The ratio between compensatory and punitive damages in this case is five to one. In *BMW*, the United States Supreme Court held that punitive damages must bear a "reasonable relationship" to compensatory damages. *BMW*, 517 U.S. at 580, 116 S. Ct. at 1601. Although there have been several major United States Supreme Court decisions addressing the constitutional propriety of punitive damage awards in the last few years, the Court has never established a rigid mathematical formula for the relationship between compensatory and punitive damages. Relying on *BMW*, Ingle's argues that a punitive damages award of "more than four times the amount of compensatory damages might be close to the line in the area of constitutional impropriety." *BMW*, 517 U.S. at 582, 116 S. Ct. at 1603. Ingle's has not cited to any case, however, where a ratio of compensatory damages to punitive damages of five to one has been held to be *per se* unconstitutional. Indeed, the Sixth Circuit has recognized that cases where injuries are without a ready

monetary value, such as this case involving impairment to reputation and impairment of liberty rights, as well as emotional injuries, then higher ratios between compensatory and punitive damages are to be expected. *Argentine*, 287 F. 3d at 488. Finally, as indicated above, Ingle's has offered no case where the ratio between compensatory and punitive damages of five to one has been held to be unreasonable and unconstitutional. That Ingle's could not cite such a case seems to be consistent with the cases upholding even greater ratios where the harm to the plaintiff was difficult to quantify.

After considering the facts of this case in light of both the *Hodges* factors and the factors cited by the United States Supreme Court for determining whether an award of punitive damages is acceptable for purposes of constitutional scrutiny, this Court cannot find that the punitive damages verdict of the jury in this case was unreasonable or unconstitutional and the Court declines to grant a new trial on this issue or to exercise its power to suggest a remittitur of the punitive damages award.

VII.     **THE MOTION FOR NEW TRIAL BECAUSE THE TRIAL COURT DENIED INGLE'S MOTION TO DISMISS MEMBERS OF THE JURY POOL WHO WERE PREVIOUSLY CHARGED WITH A CRIME OR WHO HAD A SPOUSE OR CLOSE FAMILY MEMBER SO CHARGED.**

Prior to the trial of this case, Ingle's moved this Court to exclude from the jury pool all persons who were previously charged with a crime or who had family members who had been previously charged with a crime. This Court denied Ingle's motion but conducted individual voir dire of all such prospective jurors and allowed questioning by

33

Ingle's counsel. All such jurors affirmatively and unequivocally indicated to the Court during the voir dire process that each could set aside such prior experiences and determine this case solely and only upon the evidence and testimony admitted at this trial. Apparently satisfied with such representations, Ingle's declined to further challenge any of these prospective jurors for cause and, in fact, declined to exercise its peremptory challenges to exclude such individuals. Now, subsequent to an adverse verdict, Ingle's argues that the voir dire process was tainted and that an unfair jury was impaneled.

This Court took considerable precautions during jury selection to assure that a fair and impartial jury was impaneled for the trial of this case. The process used by the court, unobjected to by Ingle's, was more than sufficient to insure a fair and impartial jury and Ingle's argument in this regard is totally without merit. In addition, other than its conclusory and general suggestion of bias, Ingle's fails to point out any specific bias on the part of any individual juror or how Ingle's was prejudiced in any way by the composition of the jury .

## VIII. THE MOTION FOR NEW TRIAL BECAUSE THE TRIAL COURT ERRED IN EXCLUDING AND ALLOWING CERTAIN UNSPECIFIED EVIDENCE AT TRIAL.

As a final matter, Ingle's challenges "certain evidentiary issues determined by the Court at and prior to trial", referring to "numerous instances where hearsay testimony was allowed" and argues that, in light of these alleged errors, Ingle's is entitled to a new trial. Ingle's does not specify which of these numerous evidentiary issues it now complains of

and has not called the Court's attention to any specific pretrial ruling or to the Court's specific ruling as to any objection during trial. This Court cannot, therefore, evaluate the defendant's complaints and a new trial will not be granted on this ground.

## IX.      **CONCLUSION**.

For the reasons set forth in this memorandum opinion, defendant's motion for judgment as a matter of law or, in the alternative, for a new trial or for remittitur is **DENIED**.

**SO ORDERED**.

**ENTER**: